IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANGEL FIGUEROA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. H-03-2674 |
| | § | |
| MARINE TRANSPORT LINES, INC., | § | |
| and INTREPID PERSONNEL & | § | |
| PROVISIONING INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

The following Motions are pending in this case: Defendants' Motion for Summary Judgment (Docket Entry No. 24); Defendants' Motion To Strike Inadmissible Evidence (Docket Entry No. 31); and Defendants' First Amended Motion for Summary Judgment (Docket Entry No. 43). For the reasons that follow, Defendants' First Amended Motion for Summary Judgment is **GRANTED**. The other two Motions are **DENIED AS MOOT**.

### I. BACKGROUND

Plaintiff makes the following claims for relief: Title VII national origin and sex discrimination; Title VII retaliation, intentional infliction of emotional distress, negligence, and gross negligence.

Plaintiff is a merchant seaman and a member of the Seafarers' Union International. Plaintiff says he has worked as a merchant seaman for over nine years without having any problems. He obtains job referrals from the Union hiring hall. In the

1

summer of 2002, Plaintiff was hired by Intrepid Personnel & Provisioning, Inc. for an engine utility position on the SMT Chemical Trader. The Chemical Trader is operated by Intrepid Ship Management. Defendant[1] argues that all personnel on the Chemical Trader are employed by Intrepid, and not by Marine Transport Lines, Inc. Plaintiff did not challenge this in his Response.

Employment on the vessel was governed by the collective bargaining agreement between the Union and the vessel. According to the Agreement, Plaintiff had certain duties by virtue of his particular position; however, Plaintiff's duties were not limited to those assigned to his position. The Agreement states that

> the performance of duties necessary for the operation of the vessel may, from time to time, involve work that crosses traditional department lines, and such work that may cross traditional departmental lines shall not be refused, and shall not receive additional compensation unless such compensation is expressly provided for in this Agreement.

Plaintiff received his first written warning from Defendant on August 11, 2002. He had been asked by his immediate supervisor to fill the rag bin, and he responded that there was someone else available whose job it was to perform that task. The letter of warning indicated that "[t]he manner in which you replied was [d]iscourteous and not warranted." Plaintiff says he submitted a written rebuttal to this letter of warning, but in his deposition, Plaintiff stated that the first written complaint he filed was after he injured his hand.

In an Appraisal covering the period of August 3, 2002 to August 18, 2002, Plaintiff received an overall rating of "some improvement needed." In individual categories he received two marks of "good/fully effective," three marks of "good/fully

---

[1] The Memorandum will refer to Intrepid Personnel & Provisioning, Inc. as "Defendant" because, as explained later in the Memorandum, Plaintiff has not presented sufficient evidence to establish a fact question as to whether Marine Transport and Intrepid were a joint enterprise.

2

effective minus," six marks of "some improvement needed," and six marks of "unsatisfactory." His supervisor added the following comments: "Mr. Figueroa requires constant supervision, shows little initiative in his work and tends to be argumentative in the work place. A letter of warning was issued to Mr. Figueroa for improper conduct to an officer. I do not recommend Mr. Figueroa for re-hire."

On August 18, 2002, Plaintiff cut his left hand while performing a task on board. He received medical attention in Baltimore, MD. The medical records are somewhat confusing as to whether Plaintiff was fit for duty after he received medical attention. One document dated August 18, 2002 said that Plaintiff was fit for sea duty. Another dated that same day indicates that Plaintiff should be restricted to one day of light duty. Another document dated August 19, 2002 stated the following under restrictions of activity: "limited use as tolerated of L hand." Yet another document dated August 20, 2002 said that Plaintiff "was advised to keep the skin areas dry until the sutures are removed in seven days," but that Plaintiff was "permitted to participate in fit duty otherwise with no other restrictions." Finally, another document dated on August 20 stated that Plaintiff was "fit for duty and may resume his/her duties without restriction."

Defendant states that the vessel had no light duty positions, that Plaintiff's job position involved performing maintenance in the engine room, which was not a sterile environment, and that Company policy prevents a seaman with limited use of his hand from working on the vessel. Therefore, Plaintiff could not return to the vessel for ten days, until after his sutures were removed. Plaintiff claims he was fit for duty and was terminated on August 19, 2002. He presents a Certificate of Discharge from that date as proof. Defendant says that if an employee is not fit for duty, he is discharged until he is

fit, and that all employees are issued a Certificate of Discharge when they leave the vessel for any reason. Defendant adds that it does not have any record of Plaintiff being terminated during the month of August 2002. Plaintiff acknowledged in his deposition that seamen are issued a Certificate of Discharge for other reasons besides termination. Plaintiff says that he filed a written grievance after he was allegedly terminated on August 19, 2002. He does not know whether the union filed a grievance on his behalf.

Plaintiff returned to work after his sutures were removed. Around September 17, 2002, Plaintiff received his second written warning for dereliction of duty after Plaintiff failed to carry out a direct order to replace defective grease fitting on the starboard main engine. The Official Letter of Warning stated that

> Every benefit of the doubt and the opportunity for improvement have been extended to you. Your job performance up to present has been less than satisfactory. You are encouraged to perform to the standards of professional seamen and the standards set forth by S.I.U. . . . Any failure on your part to adhere to these guidelines and standards will be considered grounds for dismissal.

Plaintiff says he wrote a written rebuttal to the second warning and spoke with a union representative on September 17 about the fact that he was being required to perform duties that were not a part of his job description. In his deposition, Plaintiff said he told his supervisor that he would make a claim to the union representative.

At one time, Plaintiff was also orally reprimanded for allegedly urinating in the bilge. At the time, Plaintiff did not admit or deny that he had done so; now Plaintiff denies that he urinated in the bilge.

On September 20, 2002, Plaintiff was approached with the concern that he had a chemical burn on his hand. Plaintiff said that it was a birthmark. When an Assistant Engineer asked to see his hand, Plaintiff allegedly made an obscene gesture with his

4

middle finger. Plaintiff denies making the gesture; however, two other officers observed the encounter. It was later determined that Plaintiff had a birthmark. When Plaintiff returned to work, he was discharged from the vessel as a result of the obscene gesture. Plaintiff refused to sign the Letter of Dismissal. Along with his Response to Defendants' Motion for Summary Judgment, Plaintiff included a copy of a Certificate of Discharge, similar to the one received when he hurt his hand, dated September 20, 2002.

## II. DISCUSSION

### A. Defendants' First Motion for Summary Judgment

Defendants filed an Amended Motion for Summary Judgment, which will be discussed below. Therefore, Defendants' Motion for Summary Judgment (Docket Entry No. 24) is **DENIED AS MOOT**.

### B. Defendants' Motion To Strike Inadmissible Evidence

After Defendants filed this Motion, the Court granted Plaintiff's motion to amend his summary judgment evidence. Therefore, Defendants' Motion To Strike Inadmissible Evidence (Docket Entry No. 31) is **DENIED AS MOOT**.

### C. Legal Standard for a Motion for Summary Judgment

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law, based on the evidence thus far presented. *See* Fed. R. Civ. P. 56(c). "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (citations omitted).

Evidence is construed in the light most favorable to the non-moving party. *Id*. "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citations omitted). This Court may grant summary judgment on a claim if Defendant can show that Plaintiff has failed to establish the existence of any of the essential elements of a claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

    *D. Discussion*

    1. Whether Defendant Marine Transport Lines Was Plaintiff's Employer

Defendant Marine Transport Lines argues that is entitled to judgment in its favor because it was not Plaintiff's employer. In her affidavit, Mary L. Cervati, who is the Manager, Claims of Marine Transport Corporation, stated that Intrepid Personnel & Provisioning employs all persons who work on the SMT Chemical Trader and that Intrepid is a subsidiary of Marine Transport Lines. In his Response, Plaintiff did not address this issue. The Fifth Circuit applies the four-factor single entity test to determine whether two entities, such as a parent company and a subsidiary, served as a single employer for Title VII purposes. *Johnson v. Crown Enter., Inc.*, 398 F.3d 339, 343 (5th Cir. 2005) (citation omitted). The four factors are (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control. *Id*. (quoting *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983)). The second factor is considered the most important. *Id*. (citation omitted). Because Plaintiff has not presented any evidence to establish a fact question

concerning whether Intrepid and Marine Transport form a single enterprise, summary judgment for Marine Transport is appropriate. *Id*. at 344.

### 2. Title VII Discrimination Claim Regarding Job Duties and Harassment

Plaintiff first claims that he was discriminated against when he was asked to perform tasks that he argues were not a part of his job duties and when he was harassed. However, Plaintiff cannot make a prima facie case of discrimination because being asked to perform certain job tasks that Plaintiff subjectively considered not to be a part of his job description is not an adverse employment action. Being subjected to harassment is also not an adverse employment action.

### 3. Title VII Discrimination Claim Regarding Hand Injury

Plaintiff next claims he was discriminated against when he was terminated after he injured his hand. It is unclear whether Plaintiff was in fact terminated; however, considering the facts in the light most favorable to Plaintiff, the Court will assume that Plaintiff was terminated. Given that, it is still unclear whether Plaintiff can make a prima facie case of discrimination because he has not shown that he was replaced with someone outside the protected class.

Assuming Plaintiff has made a prima facie case of discrimination, Defendant has demonstrated a legitimate, non-discriminatory reason for its decision—that Plaintiff was not fit for duty. At this stage, Defendant need only produce evidence that provides a reason for its actions that, if believed by the trier of fact, would support a finding that discrimination was not the cause of the unlawful employment action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (citation omitted). It "can involve no credibility assessment." *Id*. at 509.

The burden now shifts to Plaintiff to show that Defendant's asserted reason is a pretext for discrimination. Looking at the facts in the light most favorable to Plaintiff, Defendant's reason for "terminating" Plaintiff can be seen as false because the medical records indicate that Plaintiff may have been fit for duty. However, even if Defendant's reason is unpersuasive, it does not necessarily mean that Plaintiff has shown that Defendant intentionally discriminated against him. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-47 (2000) (citations omitted). It is "simply one form of circumstantial evidence that is probative of intentional discrimination." *Id*. at 147 (citation omitted). How persuasive it is will depend on the particular case. *Id.* at 147-48.

The Court does not believe intentional discrimination should be inferred here because Plaintiff has presented no evidence—beyond his personal subjective belief—that Defendant discriminated against him. He cites examples of other employees he believes were injured, but were allowed to return to work sooner than he was. However, these three individuals held different positions on the vessel and may have had different duties. In addition, Plaintiff admitted in his deposition that he had no personal knowledge of the nature of their injuries or whether they were found to be fit for duty after examined by a medical professional. The fact that Plaintiff returned to work for Defendant after ten days also suggests that Defendant was not discriminating against Plaintiff when it "terminated" him. Given the relatively weak evidence that Defendant's reason is false and the fact that Plaintiff has presented no evidence of discrimination, summary judgment is warranted as to Plaintiff's claim that he was discriminated against when he was "terminated" after injuring his hand.

### 4. Title VII Discrimination Claim Regarding Discharge

A similar analysis applies to Plaintiff's discrimination claim with regards to his ultimate discharge. Plaintiff has not shown that he was replaced with someone outside the protected group. In addition, Defendant has given a legitimate, non-discriminatory reason for its decision. Plaintiff had received two letters of warning and a lackluster employment assessment. Three of its employees reported that they saw Plaintiff make an obscene gesture to a superior. Plaintiff denies that he made the gesture or that he urinated on the bilge. However, Plaintiff still has the ultimate burden to show pretext. This he simply cannot do. He has presented no evidence—besides his subjective belief—that he was discriminated against. This is not sufficient to survive summary judgment. *Douglass v. United States Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (citing cases).

### 5. Title VII Retaliation

Plaintiff argues that Defendant retaliated against him by asking Plaintiff to perform certain duties that were not a part of his job description and by harassing him. Plaintiff also appears to claim that he was retaliated against when he was issued his second written warning and when he was terminated on September 20, 2002. There are several problems with Plaintiff's arguments. First, because being asked to perform certain duties that were allegedly not part of his job description and being subjected to harassment are not adverse employment actions, Plaintiff cannot make a prima facie case of retaliation as to those events. Written warnings are also not adverse employment actions.

In addition, Plaintiff has produced no evidence that he engaged in protected activity. He says that he complained to his union representative about the fact that he

was being asked to perform duties that were not a part of his job description. However, Plaintiff produced no evidence that he complained about discrimination or another practice prohibited by Title VII. This is fatal to all of Plaintiff's retaliation claims.

Finally, Plaintiff has presented no evidence that the person who terminated him had any knowledge of Plaintiff's complaints to his union representative. Plaintiff said in his deposition that he did not complain to anyone else besides his union representative. Plaintiff argues that knowledge of his complaints can be inferred because of the fact that everyone was working in close quarters at the time. However, this is not the law. Plaintiff must produce "at least some evidence that the decisionmakers had knowledge of his protected activity." *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883-84 (5th Cir. 2003). Plaintiff has not done so. For the foregoing reasons, Plaintiff's retaliation claims are dismissed.

### 6. Intentional Infliction of Emotional Distress

Plaintiff also makes a claim for intentional infliction of emotional distress. In general, "intentional infliction of emotional distress is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005). Therefore, as long as another existing statutory or common law remedy is available to Plaintiff for the behavior underlying his intentional infliction of emotional distress claim, Plaintiff's claim fails. Whether Plaintiff actually succeeds on these claims is immaterial. *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 448 (Tex. 2004). In his Amended Complaint, Plaintiff pled the same facts for his intentional infliction of emotional distress claim as he did for his discrimination claims. However, in his deposition, Plaintiff noted three incidents that

supported his intentional infliction of emotional distress claim, two of which are independent of any incident he mentions in his discrimination claims. Therefore, construing the facts in the light most favorable to Plaintiff, the Court will assume that Plaintiff can make an independent claim for intentional infliction of emotional distress.

Plaintiff's claim still fails, however, because he cannot show that the conduct complained of was extreme or outrageous. *Twyman v. Twyman*, 855 S.W.2d 619, 621-22 (Tex. 1993). Liability for intentional infliction of emotional distress should be found "'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). "[A] claim for intentional infliction of emotional distress does not lie for ordinary employment disputes." *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999) (citations omitted). In the employment context, "extreme conduct exists only in the most unusual of circumstances." *Id*. at 613 (citation omitted). This is not one of them. Plaintiff's intentional infliction of emotional distress claim is dismissed.

7. Negligence Claims

Plaintiff's negligence claims are more correctly understood as claims for negligent supervision and training. The claims are based on the same set of facts as his Title VII claims. Courts are divided as to whether negligence claims such as the ones Plaintiff has brought here are pre-empted by a discrimination statute such as Title VII. However, even if this is not the case, Plaintiff has not shown that anyone committed an actionable tort against him. *Gonzales v. Willis*, 995 S.W.2d 729, 739-40 (Tex. App.-San Antonio 1999, no writ). Therefore, these claims are dismissed.

### III. CONCLUSION

Defendants' Motion for Summary Judgment (Docket Entry No. 24) and Motion To Strike Inadmissible Evidence (Docket Entry No. 31) are **DENIED AS MOOT**. Defendants' First Amended Motion for Summary Judgment (Docket Entry No. 43) is **GRANTED**. This case is **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

SIGNED this 28th day of July, 2005.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS NOTICE SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**